UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.  No. 5:18-cr-19-BJB

WILLIAM J. DAUGHERTY

\* \* \* \* \*

MEMORANDUM OPINION & ORDER

William J. Daugherty is serving a 100-month sentence for a methamphetamine-distribution offense. Citing his medical conditions, family circumstances, and rehabilitation, Daugherty seeks an early end to his incarceration on the basis of compassionate release under 18 U.S.C. § 3582(c)(1)(A). This is his second such request. *See* First Compassionate-Release Opinion (DN 49). Because this motion doesn't show an extraordinary and compelling basis for release consistent with the sentencing laws enacted by Congress, *see* 18 U.S.C. § 3553(a), the Court denies his motion.

I.

A federal grand jury indicted Daugherty in July 2018. He pled guilty to aiding and abetting the possession with the intent to distribute more than 50 grams of methamphetamine in January 2019. Plea Agreement (DN 23) ¶ 3; Presentence Investigation Report (DN 33) ¶¶ 1–10. The advisory Sentencing Guidelines recommended a range of 120–150 months' imprisonment, PSR ¶ 83, and the district court judge previously assigned to this case imposed a below-Guidelines sentence of 100 months. Judgment (DN 36) at 3. The sentence ran consecutively to an undischarged state sentence. *Id.* Daugherty is expected to be released in March 2025, and apparently is already eligible for home incarceration. Response to Motion (DN 57) at 2 (citing Exhibit 1 (DN 57-1)).

Daugherty first moved, *pro se*, for compassionate release and appointment of counsel in April 2021. *See* First Motion for Compassionate Release (DN 48). Daugherty mentioned his COPD and emphysema, his parents' poor health, and his rehabilitation. *Id.* at 2–4. The Court denied Daugherty's motion without prejudice because he gave no indication that he first exhausted the statutorily required administrative remedies of requesting relief from the warden of his facility. First Compassionate-Release Opinion at 1; *see* § 3582(c)(1)(A). In addition to denying the


appointment of counsel, the then-assigned district court judge stated the Court would examine any subsequent compassionate-release motions filed once Daugherty fulfilled the statutory exhaustion requirements. *Id.* at 2.

Daugherty did not file another compassionate-release request for 30 more months, however. *See* Second Motion for Compassionate Release (DN 54) at 1. That *pro se* request rests on his (1) medical conditions including COPD, depression, and a lung condition that may require thoracoscopic surgery; (2) concern with contracting Covid; (3) family circumstances relating to the health of his parents; and (4) rehabilitation. *Id.* at 4–11. The Government opposes Daugherty's motion, arguing that his medical conditions and anticipated surgery are not extraordinary and compelling because the Bureau of Prisons is appropriately addressing his medical complaints and because he is able to function independently. *See* Response to Motion at 3–4.

## II.

Before a federal inmate may request compassionate release, he must first ask his facility's warden to do so on his behalf. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (citing § 3582(c)(1)(A)). Only after the warden denies the request—or else does not reply after 30 days of receiving the request—may the inmate seek release on his own behalf. *Id.* The Government acknowledges that Daugherty exhausted his administrative remedies here. Response to Motion at 3. Daugherty requested a reduction in sentence with the warden of his facility on August 23, 2023, stating he met the qualifications for a "Debilitated Medical Condition." Second Motion at 4 (citing Exhibit A-1 (DN 54-2)). The warden denied the request one week later, determin[ing] that Daugherty "d[id] not meet the criteria under debilitated." Exhibit A-3 (DN 54-2). The warden claimed Daugherty is "independent in [his] activities of daily living and [his] current medical conditions remain under control." *Id.*

Courts evaluating compassionate-release motions apply a "three-step inquiry." *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (citation omitted). Release is appropriate only if (1) a prisoner shows that "'extraordinary and compelling' reasons warrant the reduction," (2) the court confirms that "any sentence reduction 'is consistent with applicable policy statements issued by the Sentencing Commission,'" and (3) the prisoner shows that the release is justified under the relevant § 3553(a) factors that govern federal sentencing decisions. *United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (quoting § 3582(c)(1)(A)(i)) (citations omitted). Those factors include the defendant's "history and characteristics," the "nature and circumstances of the offense," and the need to protect the public, deter criminal conduct, promote respect for the law, and avoid unwarranted sentencing disparities. § 3553(a). The motion fails if any of these three prerequisites is lacking. *Elias*, 984 F.3d at 519.

2

In its recently amended compassionate-release policy statement, the Sentencing Commission lists six categories of extraordinary and compelling reasons that may support compassionate release. Those categories are (1) medical circumstances, (2) age, (3) family circumstances, (4) abuse suffered in custody involving a "sexual act" or "serious bodily injury," (5) "other reasons" similar to those in the first four categories, and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b). Such circumstances, according to the Sixth Circuit (speaking before the policy statement), are "most unusual" and "far from common." *McCall*, 56 F.4th at 1055 (citation omitted). And in any event, district judges retain considerable discretion to determine whether a defendant's reasons are extraordinary and compelling. *See United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

### A. No Extraordinary and Compelling Reasons Warrant Daugherty's Early Release

#### 1. Medical Conditions

A medical circumstance may be extraordinary and compelling if the defendant's condition resembles one of the four situations described by the Sentencing Commission's policy statement. Set forth at § 1B1.13(b)(1), these include instances in which the defendant is:

- "suffering from a terminal illness";

- suffering from a "serious physical or medical condition" or a "serious functional or cognitive impairment" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover";

- "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or

- housed in and medically threatened by a facility affected by a disease outbreak or public health emergency causing risk that cannot otherwise be timely mitigated.

While Daugherty's medical conditions appear to be serious, *see* Exhibits B-1 to -6 (DN 54-2), his circumstances do not resemble any of those identified in the policy statement. Daugherty does not claim that he has "a serious and advanced illness with an end-of-life trajectory." § 1B1.13(b)(1)(A). In seeking relief from the warden, Daugherty selected the option describing his medical condition as "Debilitated" rather than "Terminal." Exhibit A-1. True, Daugherty does state release is warranted because "[w]ithout an emergency operation and proper follow up care, [he] will die." Second Motion at 5. Even accepting this as true, however, nothing in the

3

record indicates that any need for an operation has been overlooked or rejected; indeed, he has already received surgery consultations and at least one operation on his lungs. *See* Exhibit 3 (DN 59-1) at 1, 7; Reply to Response (DN 62) at 1 (Daugherty admitting he "recently had one of the lung operations").

Nor has Daugherty established that he is not receiving necessary medical care in general. *See* § 1B1.13(b)(1)(C). Daugherty's motion alleges he is receiving care, albeit not according to his preference. *See* Second Motion at 6 ("Daugherty does not impugn the efforts of staff at [his facility] to provide appropriate medical care. [He] has not received the level of care that he believed he would receive."). The record (including exhibits submitted by both the Government *and* Daugherty) contains several references to the medical care Daugherty has consistently received while incarcerated. He has received frequent health examinations, for example, *see* Exhibit 3; received approval for transfer to a medical center, *see* Exhibit B-2; underwent a lung operation, *see* Reply to Response at 1; and his "current medical conditions remain under control," Exhibit A-3 (letter from warden confirming that Daugherty "do[es] not meet the criteria under debilitated"). Daugherty doesn't counter this account with support or specification, despite claiming that the Government's portrayal of his health "could not be farther from the truth." Reply to Response at 1.

In a decision raised by both parties, *United States v. Coker*, a defendant who received compassionate release similarly relied on continuous supplemental oxygen due to COPD. *See* No. 3:14-cr-85, 2020 WL 1877800, at *1 (E.D. Tenn. Apr. 15, 2020). Daugherty's situation differs in important ways. Coker's medical records, in contrast to Daugherty's, stated the Bureau of Prisons was "unable to provide [her] the high amount of oxygen [she] needed." *Id.* (citation omitted). As noted above, Daugherty appears to receive oxygen. Second Motion at 6. Additionally, Coker suffered from wheelchair dependence, mobility limitations, and overall declining health, which could've ultimately led to her death, as corroborated by a medical officer. *See Coker*, 2020 WL 1877800, at *1–2. Although Daugherty's conditions undoubtedly pose challenges for him, *see* Second Motion at 7, he has not provided sufficient evidence to counter the medical professionals' observations that he remains "independent" in his daily activities. *See* Exhibit A-3; § 1B1.13(b)(1)(B).

Last, Daugherty asserts that his medical conditions would place him at an increased risk if he contracted Covid. Second Motion at 7–8; § 1B1.13(b)(1)(D). The Sixth Circuit, however, has held that the risk of contracting Covid—when the defendant can access the Covid vaccine—generally does not warrant early release. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). When an inmate has access to the vaccine, he "largely faces the same risk from COVID-19 as those who are not incarcerated." *Id.* Even accounting for new variants, the Sixth Circuit has affirmed that Covid in and of itself is not extraordinary and compelling unless an inmate can show his "particular health concerns … prevent him from benefitting from the vaccine, or that he is at any greater risk than a member of the general public."

4

*United States v. Davis*, No. 22-1319, 2022 WL 13638659, at *2 (6th Cir. Sept. 7, 2022). While recognizing the potential effects Covid and other diseases could have on Daugherty and specifically his lungs, *see* Second Motion at 7–8, he has failed to show that he is "unable to receive or benefit from a vaccine." *Lemons*, 15 F.4th at 751 (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). Thus Covid cannot amount to an extraordinary and compelling reason warranting a sentence reduction.

Separately, Daugherty's conditions of emphysema and COPD, *see* Second Motion at 4–7, cannot justify compassionate release. He had those conditions before he was sentenced, *see* PSR ¶ 62, and has not pointed to any change in circumstances that would alter their bearing on his original sentence. "[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021). The judge who sentenced Daugherty knew about his medical conditions, which were mentioned in the presentence report. PSR ¶ 62. While Daugherty's medical issues appear to have progressed, he hasn't shown the issues have become terminal, debilitating, or unaddressed. So his situation does not appear to differ materially from the medical infirmities that existed at the time of sentencing. *Compare* Exhibit 3 (BOP medical records), *with* PSR ¶ 62 (indicating that Daugherty's current medical conditions existed at the time of sentencing).

### 2. Family Circumstances

Daugherty briefly mentions the poor health of his parents—particularly his mother's lung cancer—to support his motion for compassionate release. *See* Second Motion at 10–11. While the Court sympathizes with Daugherty's family, this consideration doesn't warrant early release. That may be appropriate if a defendant's immediate family member is "incapacitated" and the defendant is the only available or suitable caregiver. § 1B1.13(b)(3); *United States v. Mathews*, No. 2:19-cr-41, 2023 WL 5924411, at *3 (S.D. Ohio Sept. 12, 2023) (citation omitted) (defendant bears burden to make this showing). Daugherty, however, hasn't shown his parents need assistance and that he is the only potential caregiver.

### 3. Rehabilitation

Daugherty states his case is the "epitom[e] of rehabilitation" and thus should be granted compassionate release. Second Motion at 9. According to the motion, he has not received a single disciplinary infraction while incarcerated, has completed several college courses, has begun preparing himself for employment after imprisonment, and has obtained certificates in a nonresidential drug abuse program and drug education class. *See id.* at 9–10.

These extensive efforts at rehabilitation and reform are certainly commendable, and the Court applauds him for them. But Congress has legislated that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see Hunter*, 12 F.4th at 572 ("Congress was emphatically clear that rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.") (cleaned up). Setting aside Daugherty's failure to present other extraordinary and compelling reasons for release, his rehabilitation is not necessarily extraordinary: "many (if not most) inmates take advantage of the rehabilitative programs offered at state and federal institutions." *United States v. Mosley*, No. 1:09-cr-65, 2023 WL 8828004, at *4 (S.D. Ohio Dec. 21, 2023).*

### B. Section 3553(a) Factors

Even if Daugherty could establish an extraordinary and compelling justification under § 3582(c), release would be inconsistent with the relevant sentencing factors set forth by Congress. *See* § 3582(c)(1)(A). As noted above, these factors include the "history and characteristics of the defendant," the "nature and circumstances of the offense," and the need "to promote respect for the law," "reflect the seriousness of the offense," "provide just punishment," "[deter] criminal conduct," and "avoid unwarranted sentenc[ing] disparities." § 3553(a).

Daugherty's rehabilitative efforts are admirable, and his familial support is important. But the § 3553(a) factors still cut against a sentencing reduction here. Daugherty's offense and criminal history are significant. *Compare* Second Motion at 9, *with* PSR ¶¶ 36–45. Although this offense apparently did not involve violence or a weapon, "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010). That danger cautions against a sentence reduction under § 3553(a). *Id.*; *United States v. Alford*, No. 5:14-cr-77, 2021 WL 1511643, at *3 (E.D. Ky. Apr. 9, 2021) (denying

---

* Because the Court denies Daugherty's second motion, it need not consider whether granting the motion would have been consistent with the applicable Sentencing Commission policy statements, which present another set of prerequisites for early release. *See McCall*, 56 F.4th at 1054.

6

compassionate release in part because the danger of drug trafficking militated against sentence reduction).

Daugherty's 100-month sentence reflects the seriousness of his offense and protects the public from his future transgressions. *See, e.g.*, *United States v. Maxwell*, 991 F.3d 685, 693–94 (6th Cir. 2021) (sentence reflected "severity of [defendant's] criminal conduct" and "likeliness of recidivism"). Reducing the sentence could also contribute to sentencing disparities, as Daugherty was already sentenced below the Guideline range. *See, e.g.*, *United States v. Haygood*, No. 2:19-cr-144, 2022 WL 1073573, at *3 (E.D. Tenn. Apr. 8, 2022) (compassionate release of a sentence for conspiracy to distribute more than 50 grams of methamphetamine that was below the Guideline range could "create an unwarranted disparity in sentencing").

## ORDER

The Court denies Daugherty's second motion for compassionate release (DN 54).